IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEW WORLD INTERNATIONAL, INC., and NATIONAL AUTO PARTS, INC., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | NO. 3:15-CV-01121-M |
| FORD GLOBAL TECHNOLOGIES, LLC, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion to Dismiss for Duplicative Suit, Lack of Personal Jurisdiction, Improper Venue, Ineffective Service, and Lack of Declaratory Judgment Standing [Docket Entry #13], and Plaintiffs' Motion for Jurisdictional Discovery [Docket Entry # 40]. For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED** and Plaintiffs' Motion for Jurisdictional Discovery is **DENIED**.

### I. FACTUAL BACKGROUND

The Defendant, Ford Global Technologies, LLC ("FGTL"), claims that automotive parts sold by the Plaintiffs are the subject of design patents. The Plaintiffs, who seek a declaratory judgment of invalidity, unenforceability, and non-infringement, are New World International, Inc. ("NWI") and National Auto Parts, Inc. ("NAP")—two automotive parts sellers located in Irving, Texas.

FGTL is incorporated in Delaware and headquartered in Michigan [Docket Entry #14, Ex. 2 (Decl. of Damian Porcari)]. It owns, manages, and licenses intellectual property. According to the Declaration of Damian Porcari, FGTL does not do any business in Texas nor

1

have any employees or offices in Texas.  It is a subsidiary of Ford Motor Company ("Ford"), also a Delaware company headquartered in Michigan.  The Porcari Declaration states that FGTL does not make or sell automobiles or automotive products.  FGTL licenses patents to Ford and LKQ Corporation ("LKQ"), a Delaware company headquartered in Illinois.  Ford and LKQ do business in all fifty states [Docket Entry #43 at 5 n.6].  FGTL's relationship with LKQ arose out of earlier patent litigation [Docket Entry #26 at 2].  As part of a settlement, LKQ was granted a license by FGTL, giving LKQ a right to import and sell aftermarket products covered by the patents which are the subject of the Plaintiffs' declaratory judgment action ("the License").  *Id.*

The License does "not prohibit FGTL and Ford . . . from making, having made, importing, exporting, selling, offering for sale[,] distributing or licensing any products anywhere in the world that are branded, endorsed, manufactured or made by a Ford Associated Company," but it is "otherwise . . . exclusive" to LKQ [Docket Entry 33 at § 3.1].  It includes several provisions relating to litigation on the patents subject thereto.

The License makes clear that LKQ "has no right, title or interest in or to the FGTL Design Patents," *id.* § 7.1, and that LKQ has no "right to grant sublicenses," *id.* at § 3.2.  The License states that each party is "an independent contractor in the performance of each and every part of the license," and that "neither party has the power or authority to act as agent, employee or in any other capacity to represent, act for, bind or otherwise create or assume any obligation on behalf of the other party for any purpose whatsoever." *Id.* at § 19.1.  The License states that LKQ may not use Ford's or FGTL's trademarks.  *Id.* at § 7.2.  It also requires LKQ to identify its products as "Non Original Equipment Aftermarket Part[s]."  *Id.* at § 9.2.

2

From at least September, 2011, to November, 2013, FGTL sent various communications to NWI, including cease and desist letters, in which it accused NWI of infringing FGTL's patents, and threatened to initiate litigation. For example, in May of 2013, FGTL wrote NWI, advising that to prevent legal action against it, NWI had to "agree to refrain from importing or selling parts covered by Ford design patents" [Docket Entry #26-1 at 15–16]. That letter, copied to LKQ, also stated that "LKQ Corporation may be able to assist you in the disposal of your existing inventory." LKQ then contacted NWI, asking it to provide details regarding its inventory in order to "determine the most prudent disposal method" [Docket Entry #26-1 at 69].

## II. PROCEDURAL BACKGROUND

NWI and NAP filed this suit in April of 2015, seeking a declaratory judgment of non-infringement and invalidity. FGTL has moved to dismiss under Rules 12(b)(1)–(5), claiming: 1) this is a duplicative suit; 2) this Court does not have personal jurisdiction over it; 3) venue is improper; 4) service of process was improper; and 5) Plaintiffs do not have standing. NWI and NAP urge that if the Court finds the evidence of personal jurisdiction over FGTL to be insufficient, it should allow jurisdictional discovery of FGTL's contacts with Texas.

## III. ANALYSIS

### a. DEFENDANT'S MOTION TO DISMISS

#### i. *Personal Jurisdiction*

Because jurisdiction is a threshold issue, courts must address it before considering the merits of a case. *Steel co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). Federal Circuit law governs issues related to personal jurisdiction in declaratory judgment patent cases. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting

3

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).  When the court determines personal jurisdiction on affidavits and other similar written materials, without a hearing, generally the plaintiff must satisfy only a prima facie case.  *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  Under such a burden, factual disputes are to be resolved in the plaintiff's favor.  *Id.*

To exercise personal jurisdiction over a defendant, a court must conclude that the forum's long-arm statute is satisfied, and that assertion of personal jurisdiction under the circumstances does not violate due process.  *Genetic Implant Sys., Inc. v. CoreVent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Redzewicz*, 471 U.S. 462, 471–76 (1985)).  Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the due process prong of the test is at issue.  *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

There are two types of personal jurisdiction—general and specific.  Foreign corporations are subject to general jurisdiction only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 754 (2014).

When general jurisdiction does not exist, a court may exercise specific jurisdiction over a defendant only "if the cause of action 'arises out of' or 'relates to' the defendant's in-state activity."  *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*, 444 F.3d 1356, 1360–61 (Fed. Cir. 2006); *Daimler*, 134 S. Ct. at 754.  To determine if specific jurisdiction exists, a court must

4

inquire whether a defendant has purposefully directed its activities at the forum and, if so, whether the litigation results from alleged injuries that arise out of or relate to those activities. *Breckenridge Pharm., Inc.*, 444 F.3d at 1363. If the Court finds these elements present, then the burden of proof shifts to the defendant, which, to support a finding against jurisdiction, must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

In patent cases seeking a declaratory judgment, the harm alleged is the "wrongful restraint [by the patentee] of the free exploitation of non-infringing goods." *Avocent Huntsville Corp*, 552 at 1332. To determine whether a patent holder is subject to specific jurisdiction in the forum where the declaratory judgment suit is brought, courts examine whether the patent holder "purposefully directed" there activities related to the enforcement or defense of the patent, and, if so, the extent to which the action "arises out of or relates to" such enforcement or defense. *Avocent Huntsville Corp.* 552 F.3d at 1332; *see generally Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 790 (Fed. Cir. 2011).

    ii.    <u>General Jurisdiction</u>

NWI and NAP argue that general jurisdiction exists over FGTL in Texas because FGTL's contacts with Texas are "continuous, systematic, and substantial" [Docket Entry #26 at 11]. In *Daimler,* the Supreme Court held that general jurisdiction over a nonresident defendant exists only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." *Daimler,* 134 S. Ct. at 761 (quoting *Goodyear,* 131 S. Ct. at 2851). The Supreme Court rejected the notion that a nonresident defendant is subject to general jurisdiction "in every State in which [the defendant] engages in a

substantial, continuous, and systematic course of business," finding such an approach "unacceptably grasping." *Id.* at 760.  The Supreme Court held that only in an "exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business . . . be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n. 19; *see Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (holding that it is "incredibly difficult to establish jurisdiction in a forum other than the place of incorporation or principal place of business").

NWI and NAP argue that general jurisdiction exists for four reasons: first, vehicles and parts covered by FGTL's design patents are continuously and systematically sold in Texas; second, Ford's website says that FGTL has technology and intellectual property available for licensing and sale throughout the United States; third, FGTL entered into an "alliance" with a Texas company to develop technology; and finally, FGTL's licensee, LKQ, operates in Texas.[1]

Sale in Texas of vehicles and repair parts allegedly covered by the patents is insufficient to establish general jurisdiction over FGTL.  In *Daimler*, the Supreme Court rejected general jurisdiction over Daimler in a state even though it had "multiple offices, continuous operations, and billions of dollars' worth of sales." 134 S. Ct. at 772 (Sotomayor, J., concurring).  The activity by FGTL here is considerably less significant.  Ford's website stating that FGTL offers intellectual property for license and sale cannot establish general jurisdiction over FGTL under the analysis of *Daimler*.  Such activity does not constitute that extensive business within a forum necessary to support a finding of general jurisdiction.  Next, FGTL's alliance with a Texas

---

[1] NWI and NAP have not claimed general jurisdiction over FGTL based on the contacts of Ford, and have presented no evidence regarding Ford's contacts with Texas.  The Court therefore will not address that issue.

company to develop technology does not render it "essentially at home" in Texas.[2] *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A business relationship with a company in the forum is clearly insufficient. In simple terms, doing business with a company that does business in [Texas] is not the same as doing business in [Texas].").

Finally, FGTL's licensing relationship with LKQ does not create general jurisdiction over FGTL. Even if, contrary to the Court's conclusion, LKQ's contacts could be imputed to FGTL for purposes of general jurisdiction, NWI and NAP have not shown that LKQ is subject to general jurisdiction in Texas. The evidence NWI and NAP have presented—a print out from LKQ's website showing it has several business locations in Texas—does not support a conclusion that either it or FGTL have the requisite scope and magnitude of Texas contacts to support a finding of general jurisdiction. *See generally Xilinx, Inc. v. Papst Licensing GMBH & Co. KG*, 2015 WL 4149166 (N.D. Cal. July 9, 2015) (facts that defendant brought patent infringement suits in California courts, had licensing agreements with California companies, gained revenues from California firms, and had California-based counsel did not support general jurisdiction).

    iii.    <u>*Specific Jurisdiction*</u>

---

[2] NWI and NAP provided a press release from 2006 stating that Ford and FGTL entered into a "commercial innovation and software marketing alliance" with UGS Corp., a Texas-based company, to develop "commercial product lifecycle management (PLM) technology" [Docket Entry #26-1 at 79]. Through that alliance, FGTL would "collaborate with UGS Corp. to provide early input into the development of new PLM solutions and . . . gain immediate access to the new technology, while UGS [would be] able to more quickly bring new commercial PLM software to market." *Id.*

NWI and NAP alternatively claim that this Court has specific jurisdiction over FGTL because it sent cease and desist letters to them in Texas, LKQ does business in Texas, and LKQ has assisted FGTL in its efforts to enforce the patents at issue [Docket Entry #26 at 10–11].

NWI and NAP acknowledge that merely sending cease and desist letters to a person in a state does not subject the sender to specific jurisdiction there. *Radio Sys. Corp.*, 638 F.3d at 789; *see Avocent*, 552 F.3d at 1333 (quoting *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998)). As the Federal Circuit expressed in *Red Wing Shoe*, "[m]ere threats of infringement directed at the forum are not sufficient to satisfy due process requirements." 148 F.3d at 1361.

For there to be specific jurisdiction over a patent holder defending a declaratory judgment action, "there must be 'other activities' directed at the forum *and related to the cause of action* besides the letters threatening an infringement suit." *Avocent Huntsville Corp.*, 552 F.3d at 1333. Patent enforcement efforts or licensing agreements that impose "enforcement obligations with a party residing or regularly doing business in the forum" could be sufficient. *Id.* at 1334. However, a patent holder's efforts to commercialize a patent have been held not to be activities related to the patent's enforcement that give rise to specific jurisdiction. *Radio Sys. Corp.*, 638 F.3d at 789.

The only "other activity" NWI and NAP rely upon as a basis for specific jurisdiction is the License between FGTL and LKQ. When "a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close examination of the license agreement." *Breckenridge*, 444 F.3d at 1366. An exclusive license may constitute "other activity" for jurisdictional purposes if it "contemplate[s] a relationship

8

beyond [a] royalty or cross licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities." *Id.*

A close examination of the LKQ License reveals that it does not impose continuing obligations on FGTL to enforce or defend the patents in Texas nor give LKQ an independent right to enforce those patents, and it does not give FGTL control over LKQ's business operations. That relationship between FGTL and LKQ does not create nationwide jurisdiction over FGTL in declaratory judgment patent cases where the independent entity LKQ is doing business.

In the jurisdictional context, the Federal Circuit has drawn a distinction between a licensor's relationship with an exclusive licensee and a licensor's relationship with a non-exclusive licensee. *Xilinx, Inc.*, 2015 WL 4149166; *see, e.g., Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (holding that jurisdiction is proper where the defendant grants an *exclusive* license that includes the right to litigate infringement claims in the forum); *Red Wing Shoe Co.*, 148 F.3d at 1361 (noting that, in *Akro*, the Federal Circuit "emphasized the exclusive nature of the license, stating that 'the exclusivity of [the] license agreement . . . created continuing obligations' between the patentee and the forum."). Although the grant of a non-exclusive license to an in-state licensee does not subject the licensor to personal jurisdiction in that state, the grant of an exclusive license may support personal jurisdiction over the licensor if the license imposes specific enforcement obligations on the licensor or licensee. *See Breckenridge,* 444 F.3d at 1366 ("the defendant is subject to personal jurisdiction in the forum state by virtue of its relationship with its exclusive forum state licensee *if* the license agreement, for example, requires

the defendant-licensor, and grants the licensee the right, to litigate infringement claims." (emphasis added)).

The parties dispute whether the License is, in fact, exclusive. NWI and NAP point out that in court documents FGTL has referred to LKQ as its "exclusive licensee." FGTL claims that the License is not exclusive for jurisdictional purposes, because FGTL has also granted Ford a license of the patents and maintains that it has referred to LKQ as an "exclusive licensee" only with respect to aftermarket parts. Indeed, the License itself expressly provides that it does "not prohibit FGTL and Ford . . . from making, having made, importing, exporting, selling, offering for sale[,] distributing or licensing any products anywhere in the world that are branded, endorsed, manufactured or made by a Ford Associated Company . . . but shall *otherwise* be exclusive." [Docket Entry 33 at § 3.1] (emphasis added).

For purposes of this analysis, the Court finds the LKQ License to be exclusive. There is no "bright-line rule that a party cannot be an exclusive licensee of a patent if others have the right to license the patent . . . a licensee is an exclusive licensee of a patent if it holds any of the exclusionary rights that accompany a patent." *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010). LKQ has an exclusive license to import and sell aftermarket parts, and FGTL's License with LKQ "eliminate[d] any possibility of [FGTL] entering into any type of licensing arrangement" with NWI and NAP. It is thus exclusive. *Akro*, 45 F.3d at 1546.

However, LKQ's doing business in Texas does not constitute purposeful direction of enforcement activity chargeable to FGTL. In *Akro*, in which the Federal Circuit first recognized that an exclusive license could support a finding of specific jurisdiction against the licensor in declaratory judgment patent cases, the license imposed mutual *requirements* on the licensee and

10

licensor to litigate infringement suits. *Akro,* 45 F.3d at 1546 (the license required the patent holder to "defend and pursue any infringements against his patent" and granted the licensee the power to litigate infringement suits, and thus was held to have created "continuing obligations" related to enforcement of the patent in the forum).  In *Genetic Implant Systems, Inc.*, the licensor authorized the exclusive distributor to use its trademarks in marketing and distributing products covered by patents, and it agreed to indemnify the distributor for liability arising from any third-party patent infringement action.  123 F.3d at 1459.  In *Breckenridge Pharmacy*, the licensee, with the licensor's consent, had the right to sue for patent infringement on its own behalf, and the parties obligated themselves to "discuss in good faith the appropriate action, if any, with respect to [infringers]."  444 F.3d at 1366–67.  The license granted the licensee "full control of the prosecution or maintenance" of any patent or application that the licensor abandoned or permitted to lapse," and the evidence showed that the patent holder and licensee frequently coordinated in litigating infringement claims, and were often represented jointly by the same counsel.  *Id.*  Further, the licensor agreed to consult with the licensee regarding marketing of the covered products.  *Id.*

Nothing in the LKQ License compels FGTL to take affirmative action in Texas or to defend the patents at issue in Texas, nor does it give LKQ enforcement rights over the patents. FGTL alone has "the right to determine what action, if any, is to be taken" to enforce the patents, and FGTL may defend the patent in the forum "or not, at FGTL's discretion."  If a party sues LKQ for infringement, "FGTL will have the right at its discretion to handle such a claim, demand, or suit in any manner whatsoever."  Further, FGTL is not required by the License to indemnify LKQ for suits initiated by third parties.  Thus, there is no "continuing obligation" for

11

FGTL to litigate patent suits in Texas, and LKQ is not authorized to initiate lawsuits against alleged infringers or to defend against allegations of infringement without FGTL's written consent.  [Docket Entry 33 at § 3.2] ("If any claim, demand or suit for infringement will be asserted against LKQ . . . *[w]ith FGTL's prior written consent*, LKQ may handle such a claim, demand, or suit in a manner agreed upon by the parties.") (emphasis added).

Similarly, in contrast to the situation in *Genetic Implant Systems*, FGTL does not have authority under the License to control LKQ's business or marketing decisions.  [Docket Entry #14, Ex. 2].  NWI and NAP merely point to a provision in the License stating that LKQ must accurately identify its products as "Non Original Equipment Aftermarket Part[s]," and characterize that that provision as constituting "control" over LKQ's marketing.  In the Court's view, this requirement does not show that FGTL has "the right to exercise control" over LKQ's marketing activities.

NWI and NAP have presented no evidence that FGTL alone, or together with LKQ, has engaged in any other enforcement activity, such as initiating lawsuits in Texas, nor that it has engaged in any kind of extrajudicial enforcement by, for example, interfering with NWI and NAP's business relationships.[3]  *Compare with Autogenomics, Inc. v*, 566 F.3d at 1019 ("harming plaintiff's business activities in forum state is a sufficient additional factor to justify the exercise of personal jurisdiction."); *Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding jurisdiction over a patentee who engaged in "extra-judicial patent enforcement," by enlisting a third party to remove defendant's products from a trade show that was being held in

---

[3] FGTL's lawsuit against NWI in Minnesota is not relevant to this inquiry.  Filing a suit against a Texas citizen in a different forum does not constitute enforcement activity within this state.  *See Juniper Networks, Inc. v. SSL Servs., LLC*, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009), *aff'd* 2010 WL 5140471 (Fed. Cir. 2010).

the forum); *Viam Corp. v. Iowa Exp. Imp, Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) (finding jurisdiction where defendants had "initiated a suit seeking to enforce the same patent . . . in the same district court").

NWI and NAP argue that LKQ has assisted FGTL in enforcement activities, but in support they point only to the letter from FGTL stating that LKQ may be able to assist with disposal of infringing products and the letter from LKQ regarding possible disposal of those products. NWI and NAP concede the cease and desist communications cannot form the basis of specific personal jurisdiction. *See, e.g., Silent Drive,* 326 F.3d at 1202 ("*[L]etters threatening suit for patent infringement* sent to the alleged infringer by themselves 'do not suffice to create personal jurisdiction.'" (quoting *Red Wing Shoe,* 148 F.3d at 1359–60) (emphasis added)); *Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *1 (W.D. Tex. Mar. 26, 2015) (a letter threatening to sue if the alleged infringer did not enter into a license agreement, and stating that "litigation will remain an option until this matter is resolved," did not support the exercise of jurisdiction). The communications to NWI fall within the realm of cease and desist communications.

NWI and NAP have failed to make a prima facie case that FGTL purposefully directed enforcement activities at Texas. *See Breckenridge Pharm., Inc.*, 444 F.3d at 1363. The Supreme Court recently admonished against "exorbitant exercises of all-purpose jurisdiction" over foreign corporations where that "global reach" prevents corporations from "structur[ing] their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler*, 134 S. Ct. at 746. Patent holders cannot structure their primary conduct

with such assurances if the patent holder is subject to jurisdiction wherever its licensee decides to do business.

The Court finds that NWI and NAP have not made out a prima facie case supporting a finding of specific jurisdiction over FGTL.

### b. PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY

NWI and NAP alternatively seek jurisdictional discovery of FGTL's sales and licensing activity in Texas. A motion for jurisdictional discovery in a declaratory judgment patent case is not an issue unique to patent law, and thus is governed by the law of the regional circuit. *Autogenomics, Inc.*, 566 F.3d at 1021. In the Fifth Circuit, a plaintiff must make a preliminary showing of jurisdiction to support jurisdictional discovery by making "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *HEI Res., Inc. v. Venture Research Inst.,* 2009 WL 2634858, at *7 (N.D. Tex. Aug 26, 2009) (citing *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005)). A plaintiff must state what facts it believes discovery would uncover and how those facts would support personal jurisdiction. *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000).

NWI and NAP request discovery regarding only *general* jurisdiction [Docket Entry #45 at 1]. They seek to "determine how many contacts FGTL has with the State of Texas including how much FGTL technology has been licensed and/or sold to companies in Texas." *Id.* NWI and NAP have not made a preliminary showing of general jurisdiction, having failed to present factual allegations suggesting contacts between FGTL and Texas that are *so systematic* and *so continuous* that FGTL is essentially at home here. *Daimler,* 134 S. Ct. at 761. They also fail to state what specific information they expect jurisdictional discovery to uncover, instead offering

the vague assertion that it will uncover "FGTL's contacts with the State of Texas including the technology that FGTL has licensed and/or sold" [Docket Entry #40 at 2].

NWI and NAP have not provided the Court with any basis for concluding that this is the "exceptional case" where it may exercise general jurisdiction over a corporation not headquartered or incorporated in Texas. NWI and NAP's request for jurisdictional discovery appears to the Court to be a fishing expedition unsupported by any detailed showing or likelihood of discovery of jurisdictional facts. *Catalyst Medium Four, Inc. v. CardShark, LLC*, 2015 WL 1412591, at *8 (W.D. Tex. Mar. 26, 2015). The Court therefore exercises its discretion to disallow such discovery.

### IV.     CONCLUSION

Because the Court lacks personal jurisdiction over FGTL, it need not reach FGTL's arguments that the case should be dismissed for duplicative suit, improper venue, ineffective service, and lack of declaratory judgment standing. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Docket Entry # 13] is **GRANTED**, and Plaintiffs' Motion for Jurisdictional Discovery [Docket Entry # 40] is **DENIED**.

**SO ORDERED**.

October 28, 2015.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**